## In re ESTATE OF Milton PARODA.

### No. 2002–675–Appeal.

Supreme Court of Rhode Island.

April 12, 2004.

Richard G. Riendeau, Providence, for Plaintiff.

James T. Higgins, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

### OPINION

PER CURIAM.

Barbara Kusnierz (Kusnierz), appeals from a Superior Court order denying her appeal from an order of the Central Falls Probate Court. An earlier order of said Probate Court had diminished her responsibilities and duties as co-administratrix of the estate of Milton Paroda (Paroda or decedent). Kusnierz seeks a *de novo* trial in the Superior Court to determine her competence to serve as co-administratrix of the estate.

This case came before the Supreme Court for oral argument pursuant to an

order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and the memoranda that the parties filed, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time. We reverse the judgment of the Superior Court and remand the record in this case for further proceedings in line with this opinion.

## Facts and Travel

Milton Paroda died intestate on April 23, 1998, survived by four heirs at law: two sisters, Catherine Kudzma and Emily Nowak, a brother, Theodore Paroda, and a niece, Barbara Kusnierz (collectively, the heirs at law or next of kin). At the time of his death, Paroda had assets of nearly $1,000,000, including real estate, bank accounts, bonds, treasury bills, certificates of deposit, and a stock portfolio. A significant portion of these assets was held jointly with one or more of the heirs at law, not including Kusnierz. The disposition of these joint assets is the source of contention between the parties.

On September 1, 1998, Catherine Kudzma fired the opening salvo in this feud when she filed a petition seeking to have her husband, Walter Kudzma, appointed administrator of her brother's estate. The battle was joined when on September 21, 1998, Kusnierz filed an objection to Kudzma's petition and a counterpetition seeking her own appointment as administratrix of her uncle's estate. Catherine Kudzma then filed an objection to Kusnierz's counterpetition. By a decree entered on September 28, 1998, both Walter Kudzma and Barbara Kusnierz were appointed co-administrators of the estate.

Unfortunately, this co-administration proved to be impracticable, and led to both co-administrators filing cross-petitions seeking to remove the other. Walter Kudzma accused Kusnierz of wasting the estate by "failing to co-operate in the filing of estate tax returns and failing to communicate with the co-administrator in a timely manner." The remaining heirs at law consented to his petition in a letter to Walter Kudzma's counsel, citing Kusnierz's delays and obstructionist tactics in blocking Kudzma from taking any action to settle obligations of decedent's estate. On March 3, 1999, Kusnierz filed an objection to the petition, denying a lack of cooperation, but noting her objection to paying surety on a joint bond out of her personal funds. Apparently believing the best defense to be a good offense, she filed a petition on June 8, 1999, seeking to remove Kudzma as co-administrator of the estate, and alleging that Kudzma had wasted Paroda's estate "by failure to represent the estate in ascertaining the interest of the estate[,] if any, in some $500,000 worth of assets due to personal conflict of interest, as the said assets would * * * inure to his wife, Catherine Kudzma * * *." Walter Kudzma objected to the petition to remove him as co-administrator.

The cross-petitions to remove the other as co-administrator were heard before the Probate Court and an order was entered that provided as follows:

"1. The petition of Walter Kudzma is granted in part.

"2. Walter Kudzma shall be solely responsible for the day to day functioning of the estate, including, by [*sic*] not limited to, handling all of the financial affairs of said estate. Mr. Kudzma shall be responsible for obtaining a taxpayer identification number, for the opening and handling of all bank accounts and stock accounts, for the payment of bills of the estate, and any other activity necessary to administer said estate.

"3. Barbara Kusnierz, shall be allowed access to obtain any and all information concerning the estate from any third parties. She shall have no other duties as co-administrator, unless provided by further order of this Court." [1]

Kusnierz objected to this order in Probate Court and filed a claim of appeal to the Superior Court on August 2, 1999, together with her reasons of appeal, in accordance with G.L.1956 § 33-23-1. She later moved to amend her reasons of appeal, which motion was granted by rule of court on October 13, 1999. In count 1 of her reasons, as amended, Kusnierz sought to set aside the Probate Court order as contrary to law and the evidence. In count 2, she sought a judgment declaring that all sums in the joint accounts constitute property of the estate or, in the alternative, that these sums be held in constructive trust for the estate. In count 3, Kusnierz sought an injunction preventing the joint account owners, the remaining heirs at law, from removing any funds from the joint accounts. Finally, she demanded a trial by jury. Kudzma denied all allegations in Kusnierz's appeal.

This segment of the case lay dormant for nearly sixteen months [2] until February 7, 2001, when Kudzma filed an omnibus calendar assignment form and Kusnierz filed various requests for discovery. Our record is devoid of any orders that may have been issued as a result of the parties' discovery motions. Discovery ensued, however, and on May 10, 2001, Kusnierz filed motions for extension of time to file a pretrial memorandum and to compel answers to interrogatories and production of documents. Kudzma objected, but again there is no indication in the record what orders, if any, may have been issued.

On October 18, 2001, Kusnierz filed a pretrial memorandum and a memorandum to support summary judgment.[3] At that point, the case went back into hibernation for another ten months [4] until August 20, 2002, when Kudzma filed another omnibus calendar assignment form, assigning the "probate appeal" for hearing on September 25, 2002. In preparing for the hearing, Kusnierz submitted a memorandum of law to support her appeal from the Probate Court's order appointing Walter Kudzma as primary administrator of the estate. In her memorandum, Kusnierz argued *inter alia* that there is a statutory obligation to appoint the next of kin rather than a stranger to the estate. She cited several opinions of this Court for the proposition that such appointment is mandatory if such kin are suitable and competent. She further argued that Walter Kudzma has a conflict of interest as administrator because "half of the estate is being held in accounts formerly held by Milton jointly with Catherine Kudzma. [Walter] Kudzma stands to be a beneficiary of these accounts as Catherine's husband."

Kudzma replied with a pretrial memorandum and affidavit chronicling the expenses incurred by the estate because of Kusnierz's alleged delays and refusals to act in accord with the other heirs' wishes. He asserted that the order of the Pro-

---

1. This order was later amended. The amended order merely eliminated the first numbered paragraph.

2. According to the parties, there were parallel proceedings in Superior Court to partition some real estate in decedent's estate. Only fragments from these proceedings appear in this Court's record.

3. It does not appear, however, that Kusnierz ever filed a motion for summary judgment.

4. Counsel for Kusnierz explains that the period of inactivity was caused by the justice's reassignment to a different calendar.

bate Court should be affirmed because the order was entered with the "apparent consent" of Kusnierz and was "clearly supported by the facts and the evidence before the Probate Court." He further argued that Kusnierz's objection to Walter Kudzma's appointment as co-administrator because he is not next of kin was untimely. He denied Kusnierz's allegations about wasting the estate and conflict of interest, and requested that "a hearing be scheduled on these issues in the [Superior] Court as soon as possible."

The hearing on Kudzma's motion for assignment went as scheduled on September 25, 2002. However, the hearing justice did not assign the matter to either the continuous nonjury trial calendar, the continuous jury calendar, or the formal and special cause calendar pursuant to either § 33–23–9 or § 33–23–10. At the hearing, the parties presented their arguments, after which the hearing justice summarily denied the appeal and remanded the case to the Central Falls Probate Court "with just the determination that all reasonable requests of Miss Kusnierz to be kept abreast of the doings of Mr. Kudzma in his capacity as administrator should be complied with." The hearing justice cited as reasons for denying Kusnierz's request for a jury trial and a *de novo* hearing that "this Court finds that such an action would constitute a 'piecemeal' appeal, which our Supreme Court has frowned upon * * *." Kusnierz timely appealed from the order of the Superior Court.

### Discussion

Kusnierz contests the Superior Court order on a number of grounds. Her first argument on appeal is that the hearing justice erred in ruling on her probate appeal *sua sponte* when the hearing's purpose was to schedule the case on the appropriate calendar, and not to rule on the appeal. Furthermore, Kusnierz argues

that probate appeals are to be heard *de novo* in Superior Court, and not as an appeal on error. In this case, Kusnierz argues, the fact-intensive nature of her competence to act as co-administratrix of the estate requires a jury trial. She contends that the ruling violated her right to notice because the hearing justice essentially transformed Kudzma's omnibus calendar assignment form into "a surprise motion for summary judgment." Finally, she renews her arguments that the law favors next of kin over strangers as administrators and that Walter Kudzma has a conflict of interest that would compromise his judgment in administering Paroda's estate.

Kudzma counters that not all probate appeals require a *de novo* hearing. He argues that the question of who should administer the estate can be decided as a matter of law, and it was within the hearing justice's discretion to decide accordingly. He also asserts that the hearing justice was correct to deny the appeal to avoid piecemeal litigation. He asserts that the Superior Court can review all appeals from the case once all of the issues have been adjudicated in the Probate Court. Hence, the hearing justice was correct to remand the case to the Probate Court.

■ The primary issue in this appeal is whether the hearing justice erred in ruling on Kusnierz's probate appeal. We conclude that the hearing justice erred in issuing his ruling and that, on remand, Kusnierz is entitled to a *de novo* hearing in Superior Court concerning her competence to serve as co-administratrix of the estate.

Clearly, Kusnierz had standing to file the appeal in Superior Court because she was "aggrieved" by the Probate Court order diminishing her authority as co-administratrix of Paroda's estate. Section 33–23–1(a) allows "[a]ny person aggrieved by

an order or decree of a probate court * * * to * * * appeal to the [S]uperior [C]ourt * *. *." We have held that "a person is aggrieved within the meaning of § 33–23–1 if a Probate Court order or decree adversely affects in a substantial manner some personal or property right of the one seeking review * * *." *Lind v. McSoley,* 419 A.2d 247, 250 (R.I.1980). When a co-administrator's decision-making authority concerning the administration of an estate is diminished or eliminated by an order of the Probate Court, that person's personal right in administering the estate has been adversely affected. *See id.*

Chapter 23 of title 33 sets forth the mechanics of judicial review of Probate Court orders. Section 33–23–10(b) provides that when "the probate appeal raises a genuine issue of material fact, upon motion of the appellant * * * the matter shall be assigned to the continuous non-jury trial calendar or jury trial calendar." Section 33–23–10(c), however, permits assignment to the formal and special cause calendar if the appeal can be decided as a matter of law. It further provides that "a briefing schedule should be established and the matter further assigned to a justice of the [S]uperior [C]ourt for decision based upon the record and the briefs submitted."

A review of the transcript of the September 25, 2002 hearing reveals that both parties anticipated that the matter would be further assigned for a *de novo* hearing. Kusnierz's counsel clearly stated his position that she was entitled to a jury trial on the factual issues. Kudzma's counsel represented:

"My interest is to get the matter on some sort of a schedule so that we can resolve it because it has been pending for a couple of years, and it is not the fault of the Court, but there are two issues and [Kusnierz's counsel] indicates

in his pretrial memorandum * * * I think he thinks that there is a matter that could be decided as a matter of law. Our position is that Ms. Kusnierz, her power was limited for cause, and that the question of her competency is at issue."

Later in the hearing, counsel stated that he would not object if the court wanted to decide the appeal as a matter of law.

In response to Kusnierz's demand for a jury trial, the hearing justice asserted, "I realize here that in a probate situation there can often be a *de novo* hearing in Superior Court; however, at this juncture I think it is premature. The Supreme Court has said on more than a few occasions that it frowns on piecemeal appeals."

■ We observe that the hearing justice's aversion to piecemeal litigation is laudable; however, the plain language of § 33–23–1 specifically permits such a *de novo* hearing. "When a statute is clear and unambiguous, we adopt its plain and ordinary meaning." *Direct Action for Rights and Equality v. Gannon,* 819 A.2d 651, 659 (R.I.2003) (citing *Pier House Inn, Inc. v. 421 Corporation, Inc.,* 812 A.2d 799, 804 (R.I.2002)).

As noted, § 33–23–1(a) provides that "[a]ny person aggrieved by an order or decree of a probate court * * *, may, unless provisions be made to the contrary, appeal to the [S]uperior [C]ourt * * *." The statute also makes clear that "[a]n appeal under this chapter is not an appeal on error but is to be heard *de novo* in the [S]uperior [C]ourt." Section 33–23–1(d). (Emphasis added.) The *de novo* standard for probate appeals in Superior Court is well established in our case law as well. *In re Estate of Taylor,* 114 R.I. 562, 564, 337 A.2d 236, 238 (1975) (citing *Malinou v. McCarthy,* 98 R.I. 189, 192, 200 A.2d 578, 579 (1964)). In *Malinou,* 98 R.I. at 192,

200 A.2d at 579, we explained that in hearing probate appeals "the [S]uperior [C]ourt is not a court of review of assigned errors of the probate judge, but is rather a court for retrial of the case *de novo.*" (Emphasis added.)

In this case, the issue of Kusnierz's competence to retain some decision-making authority as co-administratrix was not heard *de novo* in Superior Court. The hearing was relatively brief. The parties submitted memoranda, but did not present witnesses. The hearing justice examined the probate record before the hearing, and clearly applied an extremely deferential standard. In affirming the Probate Court order and denying Kusnierz's appeal, the hearing justice declared, "[a]t the time he made that determination the Probate Judge had more information available to him than I have." It is unclear from the record, however, precisely what information had been available to the probate judge. He made no findings of fact, nor were any transcripts of the Probate Court proceedings made part of the record on appeal.

In the case before us, Kusnierz claimed an appeal from a Probate Court order that "failed to remove Walter Kudzma as Co-Administrator and limited the authority and duties of Barbara Kusnierz as Co-Administratrix." The petition that Kudzma had filed seeking to remove Kusnierz alleged that she "has wasted said estate by not responding to the needs of said estate, to wit, failing to cooperate in the filing of estate tax returns and failing to communicate with the co-administrator in a timely manner." Clearly, the proper resolution of this appeal requires a fact-intensive inquiry.

We hold that under the facts of this case, the hearing justice abused his discretion when he dismissed Kusnierz's appeal without affording her the opportunity to present evidence on a contested issue of material fact. We recognize that § 33–23–1(d) provides that "the findings of fact and/or decisions of the [P]robate [C]ourt may be given as much weight and deference as the [S]uperior [C]ourt deems appropriate * * *." Nonetheless, although § 33–23–1(d) gives the Superior Court discretion over how much weight to give to the findings of the Probate Court, the section also provides that "the [S]uperior [C]ourt shall not be bound by any such findings or decisions." Here, Kusnierz was entitled to present witnesses, affidavits, and other evidence to support her appeal in order to retry the case *de novo.*

Here, however, not only did the hearing justice fail to grant a *de novo* hearing, but also the record of the Probate Court proceedings absolutely was devoid of any factual findings. Rather, the hearing justice simply presumed that "the Probate Judge acted with some measure of competence in the regular course of his or her duties." He therefore denied the appeal stating, without any factual predicate whatsoever, that the Probate Court made a "prudential decision that one of the administrators should have had some more powers and discretion than the other * * *." We conclude that this was not a proper exercise of *de novo* review, and accordingly reverse the order.

We further note that Kusnierz, in her amended reasons of appeal, claimed a trial by jury as is provided in § 33–23–10(a): "The appellant may, in the reasons of appeal, claim a trial by jury of any factual dispute or issue raised in his or her reasons of appeal." Section 33–23–10(b) states: "If the probate appeal raises a genuine issue of material fact, upon motion of the appellant * * *, the matter shall be assigned to the continuous non-jury trial calendar or jury trial calendar, as claimed pursuant to § 33–23–10(a)." Here, howev-

er, the probate appeal came before the hearing justice upon motion of the appellee, not the appellant. Moreover, it does not appear from the record that in the more than three years that this appeal was pending in Superior Court, the appellant, Kusnierz, ever filed a motion to assign the matter for a hearing on the merits. Therefore, we do not address her demand for a jury trial, but rather leave the appropriate calendar assignment to the sound discretion of the hearing justice upon remand.

 We decline, however, Kudzma's invitation to apply the provisions of § 33–23–12 which provides:

> "If an appellant, having filed his or her reasons for appeal, fails to * * * prosecute the appeal, the [S]uperior [C]ourt, on motion of any person interested, may affirm the decree or order appealed

from or make such other order or decree as justice may require."

Kudzma neither filed such a motion in Superior Court, nor argued the issue to the hearing justice. This Court repeatedly has said that it will not address issues for the first time on appeal. *In re Damien M.*, 819 A.2d 213, 214 (R.I.2003) (mem.).

### Conclusion

For the foregoing reasons, we reverse the order of the Superior Court denying Barbara Kusnierz's appeal. We remand the record to the Superior Court for further proceedings in accordance with this opinion.