DECISION
This matter is before the Court on the appeal of Mary S. Pyne, Public Administratrix of the Estate of Shirley Downes ("Appellant") from an Order and Decision of the Probate Court of the Town of Charlestown filed on July 17, 2007. The Probate Court's Order (i) awarded the principle of the Estate of Frederick W. Downes ("Frederick's Estate") at the time of his death to the Estate of Shirley Downs and the Massachusetts Public Administratrix, (ii) awarded the accumulated income of the Estate in the amount of $125,456.33 to Mr. Downes' living heirs, and (iii) continued the matter for review and final accounting. Jurisdiction over probate appeals is pursuant to G.L. 1956 § 33-21-1.
 Facts and Travel
On July 1, 1991, Frederick Downes ("Frederick") died intestate.[1]
At the time of his death, Frederick was survived by his sister, Shirley Downes ("Shirley"), and eight cousins. Shirley was mentally handicapped and had lived in institutionalized care in Massachusetts since childhood. On July 27, 1992, Frederick's cousin, Daniel Myers ("Daniel"), petitioned the Court to probate Frederick's Estate and to appoint Daniel as guardian of the person and estate of Shirley Downes. On May 26, 1993, the Charlestown Probate Court appointed Charles Soloveitzek to act as Shirley's guardian ad litem. During that same year, Daniel died without having fully administered Frederick's Estate. The Charlestown Probate Court then appointed *Page 2 
Daniel Myers' mother, Pearl R. Myers, as administrator of Frederick's Estate. Pearl Myers ("Appellee") is one of Frederick's eight surviving cousins. On December 3, 1993, the Commonwealth of Massachusetts Probate and Family Court Department appointed Appellee Myers guardian of the person and estate of Shirley Downes.
On February 13, 1996, Shirley Downes died intestate. By the date of Shirley's death, Frederick's Estate had not yet closed, nor had any funds from that Estate been transferred to Shirley Downes.
On May 17, 2006, Appellant was appointed Public Administratrix of Shirley's Estate by the Commonwealth of Massachusetts Probate Court, Norfolk Division. In September 2006, Appellant filed a Motion to Compel an accounting of the Frederick's Estate in the Charlestown Probate Court. In January 2007, Appellee filed a Second Accounting. On May 1, 2007, Appellee requested of the Charlestown Probate Court that she be heard on the issue of distributing Frederick's Estate to other previously unidentified heirs. Both Appellee Myers and Appellant Pyne submitted briefs and oral argument.
On July 17, 2007, the Charlestown Probate Court issued an Order granting partial distribution of Frederick's Estate to heirs living at the time of Frederick's death, and partial distribution to Shirley's Estate.
Appellant Pyne appeals the Probate Court's Order granting partial asset distribution of Frederick's Estate to cousins living at the time of Frederick's death. Appellant alleges that the Order is contrary to the Rules of Descent under Rhode Island General Laws § 33-1-1, because Frederick's sister Shirley was both alive at the time of Frederick's death and legally capable to inherit, making Shirley the sole heir-at-law of Frederick's Estate, and therefore extinguishing in the cousins any rights to inherit from that Estate. *Page 3 
For the foregoing reasons, Appellant requests that this Court vacate the Order entered by the Charlestown Probate Court on July 17, 2007, and distribute the principal and income of Frederick's Estate solely to Shirley's Estate.
In rejoinder, Appellee argues that (i) § 33-1-4 bars Shirley's Estate from inheriting from Frederick's Estate because Shirley was legally incompetent, therefore extinguishing her right in law to take as an heir at the time of Frederick's death; (ii) even if Shirley Downes was capable in law to take as an heir at the time of Frederick's death, § 9-1-13 time bars Appellant's actions because Appellant began this action fourteen (14) years after Frederick's death, four years beyond the statute's ten year limitation; (iii) even if the statute begins to run from the time of Shirley's death, Appellant is still time barred by § 9-1-21, which allows a decedent's estate administrator to bring a cause of action on behalf of the decedent for actions which survive his or her death, because Shirley's Estate Administrator did not bring this cause of action within the three year statutory limitation.
For the foregoing reasons, Appellee Myers requests that the Decision of the Charlestown Probate Judge be upheld or, in the alternative, that the Appellant's demand for payment and transfer of funds from Frederick's Estate be dismissed as time-barred.
 Standard of Review
Pursuant to Rhode Island General Laws § 33-23-1(d), an appeal from probate court "is not an appeal on error but is to be heard de novo in the superior court." The de novo standard of review for probate appeals to superior court is well-established in Rhode Island's case law.In re Estate of Taylor, 114 R.I. 562, 564, 337 A.2d 236, 238 (1975). Furthermore, "in hearing probate appeals, `the Superior Court is not a court of review of assigned error of the probate judge, but is *Page 4 
rather a court for retrial of the case de novo.'" In re Estate ofParoda, 845 A.2d 1012, 1017 (2004) (citing Malinou v. McCarthy,98 R.I. 189, 192, 200 A.2d 578, 579 (1964)).
 Analysis
Central to the disposition of this case is a determination of whether Rhode Island's Rules of Descent permit a mentally incapacitated person to inherit through intestate succession. In resolving this issue, it is useful to first explore the meaning of mental incapacitation.
Black's Law Dictionary defines incapacitation as "the state of being disabled or lacking legal capacity." Black's Law Dictionary 775 (8th ed. 2004). Rhode Island courts have used interchangeably many terms which reflect a person's lack of mental capacity. The terms `unsound mind,' `legal incapacity' and `non compos mentis' are the most frequently used phrases to describe legal incapacitation. In Roe v. Gelineau, the Court explained that "the term [unsound mind] historically has been associated with the concept of legal incapacity." 794 A.2d 476, 485 (R.I. 2002). As far back as 1623, "the James I act used the term non compos mentis — literally, `not master of one's mind' — in describing what has evolved into the term `unsound mind' used in § 9-1-19." Id. The Rhode Island Supreme Court has interpreted the term unsound mind "as a condition that renders an individual legally incompetent or incapable of managing his or her everyday affairs." Kelly v. Marcantonio 187 F.3d 192, 198
(1st Cir. 1999) (citing cases). Although Rhode Island General Laws speak directly to many rights enjoyed by legally incapacitated persons, Rhode Island's Rules of Descent do not state expressly whether a person of unsound mind has the legal right to inherit.
Pursuant to § 33-1-1, "whenever any person having title to any real estate or inheritance shall die intestate as to such estate," if there is no living child or parent of the decedent, then such estate shall pass "to the brothers and sisters of the intestate, and their descendants." § 33-1-1(3). *Page 5 
To inherit under the Rules of Descent, a person must be both alive and "capable in law to take as heir at the time of intestate's death." § 33-1-4. It has long been the law in Rhode Island that an heir who predeceases an intestate cannot inherit from the intestate's estate.Daboll v. Field, 9 R.I. 266 (1869). Further, persons who are not capable in law to take as heirs are similarly barred from inheritance.
Section 33-1-1(3) does not define what makes a person capable in law to take as an heir. Appellant Pynes correctly points out that the only case law relating to Section 33-1-4 deals with posthumous children.Daboll, 9 R.I. 266 (1869). Appellee Myers does not refute this point and further fails to convince this Court that there exists any case law or legal theory which supports her claim that mentally incapacitated persons are legally barred from taking inheritance. In fact, Appellee Myers offers no case law or statutory interpretation in support of such claim. If Appellee's application of Section 33-1-4 were correct then all persons who lack capacity to contract, and any person under a guardianship, a power of attorney, or under the age of eighteen (18) would be barred from inheriting in Rhode Island. As explained inDaboll, § 33-1-4 extinguishes the inheritance rights only of posthumous children and other such persons born after a decedent's death. Shirley Downes, however, was very much alive at the time of Frederick's death, and this Court will not entertain the suggestion that mentally incapacitated persons should be treated before the law the same as the unborn.
To the contrary, the Rhode Island legislature has taken many steps to ensure the protection of legally incapacitated persons' rights and interests. § 33-15-1. Chapters 15, 16, and 18 of Rhode Island Probate Practice and Procedure deal specifically with guardianships, legally incapacitated persons, and the ways in which guardians must protect the rights of such persons. The very first provision of Chapter 15, entitled "Intention," describes the legislature's desire to *Page 6 
 promote the public welfare by establishing a system that permits incapacitated persons to participate as fully as possible in all decisions affecting them; that assists such persons in . . . protecting their rights, in managing their financial resources, and developing or regaining their abilities to the maximum extent possible; and that accomplishes these objectives through providing, in each case, the form of assistance that least interferes with the legal capacity of a person to act in his or her own behalf. § 33-15-1.
The provision goes on to state that the chapter "shall be liberally construed" to accomplish its objectives. Id. Appellee Myers' contention is thus without merit, whereby she suggests that legally incompetent persons are unable to inherit due to an inability to make sound decisions. To the contrary, both the statutes and Appellee's own guardianship duties for Shirley Downes make clear that an inability to understand the law bears no significance on one's ability to legally inherit at law.
In summation, pursuant to § 33-1-1(3), it is clear that Shirley Downes was Frederick's sole heir at law. Frederick had "no living child or parent," therefore passing his Estate to his next most consanguine kin. According to the statute, the next most consanguine kin are "the brothers and sisters of the intestate." § 33-1-1(3). Frederick Downes had two siblings; his sister Shirley and a brother who died years before Frederick's death. Pursuant to § 33-1-4, to exercise the inheritance rights described in § 33-1-1(3), one must be both alive and "capable in law to take as [an] heir at the time of intestate's death." § 33-1-4. As established by the previous analysis, Shirley was indeed alive and capable in law to take an inheritance. Frederick's brother, however, was not alive at the time of Frederick's death and therefore not capable at law to take. Shirley Downes was thus the only sibling "capable to take" from Frederick's Estate. Shirley's diminished mental state does not extinguish this right. Though she was unable to vote — R.I. Const. Art.2, § 1 — enter into contracts, or even fully understand the meaning of inheritance, *Page 7 
pursuant to Rhode Island Probate Practice and Procedure Shirley Downes was indeed capable in law to take as the sole heir-at-law of her brother Frederick's Estate.
The Court now turns to Appellee's argument that Appellant Pyne's accounting request is time-barred by §§ 9-1-13 and 9-1-21. Section 9-1-13
requires all civil actions to be commenced within ten years after such causes of action accrue. Section 9-1-21 allows an Estate Administrator to bring a cause of action on behalf of a person whose cause of action survived his or her death, so long as such action is brought within three years after decedent's death.
Appellee fails, however, to mention § 9-1-19, which states that if a person is of unsound mind, that person "may bring the cause of action . . . after the impediment is removed." Further, a statute does not begin to run against a person non compos mentis even though he has guardians who might have sued for him. Bourne v. Hall, 10 R.I. 139, 152
(1872). Thus, a legally incapacitated person's right to bring a cause of action is not barred by statutes of limitation unless and until that person is found to be of sound mind.
Appellee's focus on statutes of limitation, however, is misguided. Sections 9-1-13 and 9-1-21 apply to civil causes of action. Appellant Pyne's accounting request was not a cause of action. To the contrary, in requesting a final accounting of Frederick's Estate, Appellant Pyne merely exercised a right enjoyed by any interested parties to an Estate. Pursuant to § 33-14-1, an interested party may request, at any time, the accounting of an estate. As Administrator of the Estate of Shirley Downes, Appellant is indeed an interested party within the meaning contemplated by § 33-14-1 because not only was Shirley Downes Frederick's most consanguine heir living at the time of his death, but also Shirley was listed for fourteen years without contest as the sole heir at law of Frederick's Estate. Thus establishing in Appellant Pyne a legal right to request an accounting of the Estate for which she was an interested party. *Page 8 
 Conclusion
Based on the foregoing analysis, it is clear that Shirley Downes was the sole heir at law of Frederick's Estate. Appellant was thus well within her rights as Administrator of the Shirley Downes Estate to request an accounting of Frederick's Estate. As established, a request for such accounting is not a civil cause of action within the meaning contemplated by § 9-1-13.
It is hereby ordered that the assets of the Estate of Frederick Downes be accounted for and timely distributed to the Estate of Shirley Downes. Whether or not Appellee and remaining cousins have a right to take at law from the Estate of Shirley Downes is for future determination by the Commonwealth of Massachusetts. Shirley Downes spent much of her life in the Commonwealth of Massachusetts and subsequently died there, intestate. As such, this Court lacks, and the Commonwealth retains, jurisdiction over the probating and distribution of that Estate.
Counsel shall submit an appropriate Order for entry on or before June 25, 2008.
[1] Intending no disrespect, the Court refers to certain parties by first names in order to avoid confusion.